IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2006

**STATE OF TENNESSEE v. JERRY L. PERKINS**

**Appeal as of Right from the Criminal Court for Bradley County**
**No. M-04-197    Carroll L. Ross, Judge**

---

**No. E2005-02678-CCA-R3-CD - Filed November 27, 2006**

---

A Bradley County jury convicted the Defendant of one count of reckless homicide and one count of abuse of a corpse.  The trial judge imposed a three year sentence and a one year sentence, respectively, and it ordered the sentences run consecutively.  The trial court determined that the Defendant should receive probation on time served for the three year sentence and probation effective immediately for the one year sentence, in part because the Defendant had already spent sixteen months in jail before trial.  The State appeals contending the trial court erred in sentencing the Defendant because the trial court mistakenly believed it was required to place the defendant on probation.  We agree and reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Jerry N. Estes, District Attorney General; Shari Young and John Williams, Assistant District Attorneys General, for the Appellant, State of Tennessee.

Richard Hughes, District Public Defender; Amy Reedy, Assistant Public Defender, Cleveland, Tennessee, for the Appellee, Jerry L. Perkins.

**OPINION**

**I.  Facts**

The Defendant, Jerry L. Perkins, was convicted of one count of reckless homicide and one count of abuse of a corpse. Because the Defendant does not contest the State's presentation of the

facts in its brief, we will summarize the facts as presented in the record and in the State's brief.

The victim, Kevin Morris, worked at his parent's store, Taylor's Market. The victim first met the Defendant when the Defendant came to work at Taylor's Market around the beginning of 2000. At some point, after the victim's divorce and the Defendant's wife's death, the victim and the Defendant became close. Gradually, the victim stayed at the Defendant's home more and more often. Eventually, the victim moved in with the Defendant.

After moving in with the Defendant, the victim became more distant and "short" to his mother, Louise Morris, and she often found it difficult to talk with the victim without the Defendant listening in on the conversation. Morris testified she last spoke to her son on November 26, 2002. That conversation concerned the victim and Defendant borrowing her car. Although the car was returned to her some days later, Morris never saw her son.

Subsequently, Morris attempted to contact her son via telephone, letter, and in person. After not speaking with her son for some months, Morris filed a missing person report in March of 2003. In May of 2003, Morris drove by the Defendant's house and saw the Defendant mowing the grass. She talked with the Defendant, who said that the victim would return to the house that next Sunday. She returned on Sunday but neither the victim nor the Defendant were at the house.

Morris again found the Defendant in late July, 2003 but was still unsuccessful in locating her son. Morris then hired a private investigator in September 2003. The private investigator also had little success.

Meanwhile, during the summer of 2003, the Bradley County Sheriff's Department questioned the Defendant and searched a residence where the Defendant and victim lived for a short time to no avail. The officers followed leads to Chattanooga, which proved to be dead ends. Finally, on December 16, 2003, the Defendant was called into the Sheriff's Department where he was asked to consent to a search of his home. He consented and asked the officers to read him his rights.

The Defendant gave a statement in which he stated that the victim was in his kitchen and had been there for over a year. He stated that they had an argument, the victim threatened to kill himself, and when the Defendant tried to wrestle the gun away from him, it went off, killing the victim. The Defendant did not tell anyone because he expected to commit suicide himself. The Defendant stated to the police he had not been inside the house in over three months.

The officers searched the Defendant's house and found the victim severely decomposed. The Defendant had wrapped the victim's body in a blanket after the shooting, and the victim remained where he fell.

The Bradley County Grand Jury indicted the Defendant on one count of second degree murder and one count of abuse of a corpse. The jury found the Defendant guilty of reckless homicide and abuse of a corpse.

Because the Defendant could not afford bail, he had remained in jail for sixteen months prior to trial. The trial court sentenced the Defendant to three years for the reckless homicide conviction and one year for the abuse of a corpse conviction, and it ordered the sentences to run consecutively. The trial court found that the Defendant was a Range I offender, and the standard parole eligibility release date was 30% of the four years. The trial judge determined that, because the Defendant had already served more than 30% of his 4 year sentence while in pre-trial detention, he would serve the remainder of his sentence on probation. In its statement on sentencing, the following discussion took place:

> **Court:** That's a total of four years. 30% of that is 14 months. He has already served more than that. I've looked for ways, quite frankly, to find ways for him to serve, but the law doesn't provide for that. And I can understand your frustration, and if I'm wrong, the State can appeal me and they'll correct that on the Court of Appeals. But I do assess a four year sentence, three years on the reckless homicide and one year on the abuse of corpse. Since he has already served more than 30%, I don't think the law permits me to sentence him to actual more time on the service, because of the time. If he had not served, if he had made bond when he was originally out, then that would have left me some leeway there. But he didn't make bond, and he stayed in jail for 16 months, and that's more than 30% of the total four years .

> . . . .

> **General Young:** And Your Honor, because this is a sentence to serve, the 30% is just something that the parole board looks at, the Department of Correction looks at to determine if they're eligible for parole.

> **Court:** Well, then you - - that's fine. It may be, but I've made my decision, and as I say, if I'm wrong, you appeal me and the Court of Appeals will correct me, but - -.

> . . . .

> **Court:** So in effect, we'll have, we'll have a stricter hold on him on probation than if we sent him over there, quite frankly, because I can control him more and check more what he does than if I sent him over there when they'd turn him loose probably the first day he got over there on this amount of time.

On the reckless homicide judgment form, the trial judge indicated that the Defendant received three years probation "on time served" and credit for sixteen months of pretrial detention. On the abuse of a corpse judgment form, the trial judge indicated that the Defendant received one year probation effective immediately with no credit for pretrial detention.

The State has challenged this sentence claiming that the trial court inappropriately gave the Defendant a suspended sentence because of a mistaken belief that it was required to because the

Defendant had already served 30% of his total sentence.

## II. Analysis

On appeal, the State contends that the trial court erred in sentencing the Defendant because the trial court mistakenly interpreted the law. The State claims the law requires the trial court to enter whatever sentence it deems appropriate within the law and allow the Department of Correction to manage post-conviction release.

When reviewing a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-210(b) (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In order to determine the appropriate range of a sentence, the trial court shall consider, among other things, enhancing and mitigating factors. Tenn. Code Ann. § 40-35-210(b)(5). Whenever the court imposes a sentence, it shall place on the record either orally or in writing what enhancement or mitigating factors it found, if any, as well as findings of fact as required by other sections of the Tennessee Code. Tenn. Code Ann. § 40-35-210(f). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. State v. Carter, 908 S.W.2d 410, 412 (Tenn. Crim. App. 1995); State v. Shelton, 854 S.W.2d 116, 122 (Tenn. Crim. App. 1992). The trial record must contain specific findings of fact to support the sentence, as well as any enhancement or mitigating factors used to arrive at that sentence. Tenn. Code Ann. §§ 40-35-209(c), -210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). In the event the record fails to demonstrate the

appropriate consideration by the trial court, appellate review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169. If our review reflects that the trial court properly considered all relevant factors and the record adequately supports its findings of fact, this court must affirm the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

As to the method of serving one's sentence, a "standard offender convicted of a class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(5) (2003). The presumption for alternative sentencing can be rebutted upon one of the following findings:

> A. Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> B. Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> C. Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2003); State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

In this case, the jury found the Defendant guilty of reckless homicide and abuse of a corpse. The trial court determined that the Defendant should receive three years for reckless homicide and one year for abuse of a corpse, to run consecutively. The State does not challenge those determinations. The State does challenge the court's finding that, because the Defendant had spent more than 30% of his four year sentence in pre-trial detention, it was required to suspend the sentence and place the Defendant on probation.

We agree with the State that there is no legal authority to support the trial court's assertion that it was required to suspend the sentence and place the Defendant on probation. The release eligibility date is a date that the Defendant will be eligible for parole; however, that determination is made by the Department of Correction, not the trial judge.

Because the trial judge erred as a matter of law, there is no presumption of correctness, and we will review the sentence de novo. Again, this Defendant is presumptively a favorable candidate for alternative sentencing options. See Tenn. Code Ann. § 40-35-102(5). This presumption can be rebutted if, among other things, "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide and effective deterrence to others likely to commit similar offenses." Tenn. Code Ann. § 40-35-103(1). We conclude this is one of those situations. Allowing one who has been convicted of reckless homicide and abuse of a corpse to be released on time served and probation would seriously depreciate the nature of the offense. The Tennessee Supreme Court has found that for that presumption to be rebutted, "the circumstances of the offense as committed, must be especially violent, horrifying, shocking, reprehensible,

offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." State v. Fields, 40 S.W.3d 435, 441 (Tenn. 2001). We conclude that recklessly killing a man and leaving his body to decompose for over a year is "horrifying, shocking, reprehensible [,and] offensive. . . ." Id.

In determining whether to give probation, we also examine the general circumstances of the offense, a defendant's criminal record, a defendant's social history and present conditions, the need for deterrence and the best interest of both a defendant and the public. State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). Although the Defendant in the case under submission does not have any other criminal record, it is clear that the Defendant's social history and present condition indicate a need for incarceration. Additionally, the general circumstances of the offense were especially gruesome, and it is in the best interest of the public to have the Defendant incarcerated, at least until the parole board determines he should be released.

We therefore conclude that the trial court erred in sentencing the Defendant and reverse its judgment. The Defendant is to be incarcerated to serve his sentences of three years for reckless homicide and one year for abuse of a corpse, consecutive to the reckless homicide sentence, with credit for his pre-trial detention.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we reverse the judgment of the trial court and remand for the entry of judgments consistent with this opinion. A capias is to issue and the defendant is remanded to the custody of the Bradley County Sheriff for execution of the sentences.

_____
ROBERT W. WEDEMEYER, JUDGE